UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ahmed Mostafa,                        )
                                      )
                                      )        **Complaint In Nature**
         Petitioners,                 )        **of Writ of Mandamus**
vs.                                   )
                                      )
Michael Chertoff, Secretary           )
Department of Homeland Security       )
                                      )
Eduardo Aguirre, Jr                   )
Director of US Bureau of              )
Citizenship and Immigration           )
Services                              )
                                      )
Mary Ann Gantner, Director            )
New York Office of USBCIS             )
                                      )
Robert Mueller                        )
Director, Federal Bureau              )
Investigation; and                    )
                                      )
Alberto Gonzales, Attorney General    )
Department of Justice                 )
                                      )
         Respondents                  )

**I. INTRODUCTION**

1.   This is an individual action for declaratory and mandatory relief, authorized by

     the Declaratory Judgment Act, 28 U.S.C. § 2201, Mandamus Act 28 U.S.C. §

     1361, and the Administrative Procedure Act, et seq 5 U.S.C. § 551. This action

     challenges the inaction of the United States Citizenship and Immigration Service

     (USCIS) of not processing the Adjustment of Status Application for the

1

Petitioner, an eligible healthcare worker pursuant to Section 245 of the Immigration and Naturalization Act (8 U.S.C. § 1255) and 8 CFR § 212.15. The Petitioner meets all requirements but has been awaiting a "security check"

## II. JURISDICTION

2. This Court has jurisdiction over the present action pursuant to 28 U.S.C. Section 1331, Federal Question Jurisdiction; 28 U.S.C. Section 2201, the Declaratory Judgment Act; 5 U.S.C. Section 702, the Administrative Procedures Act; and 28 U.S.C. Section 1361, regarding an action to compel an officer of the United States to perform his duty.

## III. VENUE

3. 28 U.S.C. Section 1391(e), as amended, provides that in a civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity, or under color of legal authority, or any agency of the United States, the action may be brought in any judicial district in which a defendant in the action resides or where substantial portions or event stake place. In this case, the New York Office of the Bureau of Citizenship and Immigration Services has this matter, thus Defendant is an agency which operates within this district.

4. There are no administrative remedies available to the Petitioner to redress the grievances therein. The Petitioner only challenges the timeliness adjudication, and the procedural process. The Petitioner is not challenging the granting or

denial of his request. Therefore, the limitations of 8 U.S.C. § 1252 are not applicable.

## IV. PETITIONERS

5. Petitioner is an applicant for Adjustment of Status to Lawful Permanent Residence of the United States pursuant to INA §245, who, on August 7, 1997 filed an Adjustment of Status Application for the primary purpose of performing work as a health care worker, with the Vermont Service Center of the then Immigration and Naturalization Service, based on an approved I-140 to perform labor as a Physical Therapist. The Petitioner is a person of good moral character, in that he is an upstanding member of the communities-in which he resides.

6. The Petitioner is appearing before this court on his behalf and on behalf of his derivative beneficiaries.

## V. RESPONDENTS

7. Defendant, Michael Chertoff, is the duly appointed Secretary of Homeland Security and pursuant to the Homeland Security Act, now charged with the discharge of the Immigration and Naturalization Act and pursuant *inter alia* 8 U.S.C. § 1103 administering Bureau of Citizenship and Immigration Services. He is the ultimate decision authority over this matter.

8. Defendant, Eduardo Aguirre, is the duly appointed Director of the United States Bureau Citizenship and Immigration Service (USCIS).

9. Mary Ann Gantner is the duly appointed District Director of the New York District Office of the United States Citizenship and Immigration Service, who has failed to act on the processing of the instant Application for Adjustment of Status, based on waiting for a security check to be completed on the Petitioner.

10. Robert Mueller is the duly appointed Director of the Federal Bureau of Investigation (FBI), who has failed to discharge his duty by not completing routine security checks.

11. Alberto Gonzales is the duly appointed Attorney General of the United States and is responsible for the supervision of the FBI. In addition, pursuant to *inert alia,* 8 § USC 1103, he is charged with controlling determination of all issues of law pertaining to immigration and with representing the United States of America in various legal matters.

## VI. INDIVIDUAL ACTION ALLEGATIONS

12. Petitioners bring this action on behalf of himself and on behalf of his derivative beneficiary family, as applicants for Adjustment of Status to Lawful Permanent Residence of the United States, eligible for Adjustment of Status.

## VII. FACTUAL ALLEGATIONS

13. In August 1997 filed an application to Register Permanent Residence or Adjustment of Status (Form I-485) based on an approved I-140 to perform labor as a Physical Therapist, pursuant to Title 8 Code of Federal Regulations, part 212.15.

14. Petitioner's wife and dependent daughter have, pursuant to Section 203(d) of the Immigration and naturalization Act, have also filed Application for Adjustment of Status based upon being a derivative spouse and daughter of the Petitioner.

15. On Nov 19, 2001 the application was denied solely based on the failure to submit the required Foreign Credentialing Commission on Physical Therapy Certificate(FCCPT).

16. On December 19, 2001 the Petitioner filed a Motion to Reopen/Reconsider the denial of the application.

17. On April 8, 2002, the Motion to Reopen/Reconsider the denial of the application was granted by the then Immigration and Naturalization Service, Vermont Service Center.

18. The application was still denied again based solely on a lack of certificate on file with the then INS.

19. However, on February 5, 2002, the Petitioner had submitted the FCCPT to INS.

20. On April 16, 2002, the Petitioner wrote the INS informing them of the sent FCCPT Certificate and asking them to Reopen the case and Reconsider.

21. Subsequently INS agreed to reopen the case and on November 8, 2002, the then INS Vermont Service Center transferred the case to their New York Office.

22. On April 22, 2003, the Bureau of Citizenship and Immigration Services scheduled the Petitioner for fingerprinting at their New York Office.

23. On August 11, 2003, the Petitioner was scheduled for another interview.

24. The Petitioner was informed at that interview that his file is complete and the Office is just waiting for a security check to be completed by the FBI. He was

further informed that the FBI background check was the only remaining issue and as soon as that was completed, he will have his immigrant status.

25. Since then the Petitioner has inquired in writing as to the status of this security check on February of 2004, October of 2004 and lastly in December of 2004. The Petitioner through counsel also called the office numerous times. The Petitioner has not heard back.

26. His status remains the same and the US-CIS New York Office has not taken any action on his application since August 22, 2003.

27. Respondents have clearly exceeded the bounds of reasonableness in time adjudication.

28. Petitioner even sent this complaint to USCIS in hopes that a resolution could be reached. However, none of the Respondents replied.

## VIII. STATUTORY AND REGULATORY FRAMEWORK

29. Pursuant to Section 245 of the Immigration and Naturalization Act:

   (a) The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if:

   (1) the alien makes an application for such adjustment,

   (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence

(3) an immigrant visa is immediately available to him at the time his application if filed.

30. Pursuant to Title 8 of Code of Federal Regulations 212.15:

(a) General certification requirements.

(1) Except as provided in paragraph (b) or paragraph (d)(1) of this section, any alien who seeks admission to the United States as an immigrant or as a nonimmigrant for the primary purpose of performing labor in a health care occupation listed in paragraph (c) of this section is inadmissible unless the alien presents a certificate from a credentialing organization, listed in paragraph (e) of this section.

(2) In the alternative, an eligible alien who seeks to enter the United States for the primary purpose of performing labor as a nurse may present a certified statement as provided in paragraph (h) of this section.

(3) A certificate or certified statement described in this section does not constitute professional authorization to practice in that health care occupation.

(c) Covered health care occupations. With the exception of the aliens described in paragraph (b) of this section, this paragraph (c) applies to any alien seeking admission to the United States to perform labor in one of the following health care occupations, regardless of where he or she received his or her education or training:

    (1) Licensed Practical Nurses, Licensed Vocational Nurses, and Registered Nurses.

(2) Occupational Therapists.

(3) Physical Therapists.

(4) Speech Language Pathologists and Audiologists.

(5) Medical Technologists (Clinical Laboratory Scientists).

(6) Physician Assistants.

(7) Medical Technicians (Clinical Laboratory Technicians)

(d) Presentation of certificate or certified statements. (1) Aliens required to obtain visas. Except as provided in paragraph (n) of this section, if 8 CFR 212.1 requires an alien who is described in paragraph (a) of this section and who is applying for admission as a nonimmigrant seeking to perform labor in a health care occupation as described in this section to obtain a nonimmigrant visa, the alien must present a certificate or certified statement to a consular officer at the time of visa issuance and to the Department of Homeland Security (DHS) at the time of admission. The certificate or certified statement must be valid at the time of visa issuance and admission at a port-of-entry. An alien who has previously presented a foreign health care worker certification or certified statement for a particular health care occupation will be required to present it again at the time of visa issuance or each admission to the United States.

(e) Approved credentialing organizations for health care workers. An

8

alien may present a certificate from any credentialing organization listed in this paragraph (e) with respect to a particular health care field. In addition to paragraphs (e)(1) through (e)(3) of this section, the DHS will notify the public of additional credentialing organizations through the publication of notices in the Federal Register.

(1) The Commission on Graduates of Foreign Nursing Schools (CGFNS) is authorized to issue certificates under section 212(a)(5)(C) of the Act for nurses, physical therapists, occupational therapists, speech-language pathologists and audiologists, medical technologists (also known as clinical laboratory scientists), medical technicians (also known as clinical laboratory technicians), and physician assistants.

(2) The National Board for Certification in Occupational Therapy (NBCOT) is authorized to issue certificates in the field of occupational therapy pending final adjudication of its credentialing status under this part.

(3) The Foreign Credentialing Commission on Physical Therapy (FCCPT) is authorized to issue certificates in the field of physical therapy pending final adjudication of its credentialing status under this part.

31. Pursuant to Section 212(a)(5)(c) of the Immigration and Nationality Act, 8 U.S.C. Section 1182(a)(5)(C), as amended by the 1996 Illegal Immigration Reform and Immigrant Responsibility Act:

(C) <u>UNCERTIFIED FOREIGN HEALTH-CARE WORKERS.</u> Any alien who seeks to enter the United states for the purpose of performing labor as a health

care worker, other than a physician, is excludable unless the alien presents to . . . in the case of an adjustment of status, the Attorney General, a certificate from the Commission on Graduates of Foreign Nursing Schools, or a certificate from an equivalent independent credentialing organization approved by the Attorney General in consultation with the Secretary of Health and Human Services, verifying-

> [i] the alien's education, training, license, and experience —
>> [I] meet all applicable statutory and regulatory requirements for entry into the United States under the classifications specified in the applications;
>>
>> [II] are comparable with that required for an American health-care worker of the same type; and
>>
>> [III] are authentic and, in the case of a license, unencumbered:
>
> [ii] the alien has a level of competence in oral and written English considered by the Secretary of Health and Human Services, in consultation with the Secretary of Education, to be appropriate for healthcare work of the kind in which the alien will be engaged, as shown by an appropriate score in one or more nationally recognized, commercially, standardized assessments of the applicant's ability to speak and write: and
>
> [iii] if a majority of States licensing the profession in

>   which the alien intends to work recognize the test predicting the success on the profession's licensing and certification examination, and the alien has passed such a test.
>
>   For purposes of Clause (ii), determination of the standardized tests required and of the minimum scores that are appropriate are within the sole discretion of the Secretary of Health and Human Services and are not subject to further administrative or judicial review.

32. The Petitioner has met all the aforementioned requirement.
33. In neither of those requirements is there any mention of a security check.

**Timeliness Requirements and Consequences**

34. Section 202 (8 U.S.C § 1571) of the Title II of the American Competitiveness in the Twenty-First Century Act of 2000 (AC21) clearly lays down the parameters of reasonableness in immigration adjudications, stating: "[i]t It is the sense of Congress that the processing of an immigrant benefit application should completed not later than 180 days after the initial filing of the application."
35. Respondents are also required by 5 U.S.C § "within a reasonable time . . . to conclude a matter presented . . . ."
36. All applicants for AOS are in the United States on nonimmigrant status such as H, L, O, etc. 8 U.S.C § 1101. After going through appropriate procedures, individuals many apply to "adjust" their status to that of lawful permanent residences (LPR or green card status). 8 U.S.C § 1152. LPRs are known colloquially as people who hold "green cards."

37. Lawful permanent resident status confers many advantages over nonimmigrant status. As the name implies. LPRs have the privilege of residing and working permanently in the United States. 8 U.S.C § 1101 (a)(20). They may travel outside the United States freely and generally are readmitted to the United States automatically. 8 U.S.C § 1101 (a)(13)(C). They may petion to immigrate close family members 8 U.S.C § 1151, 8 U.S.C § 1153. 8 U.S.C § 1101

38. LPRs may retain their LPR status (or their "green card") for the rest of their lives or after five years of LPR status, they may apply to "naturalize," that is, to become a United States citizen. 8 U.S.C § 1427 (a). Citizenship conveys many benefits over LPR status. Citizens may vote; they may apply for and receive a United States passport; they cannot be deported from the United States; and they may travel freely into and out of the United States. They may petition to immigrate family members, including elderly parents, as "immediate relatives," thus eliminating many long waiting periods. 8 U.S.C § 1151 (b)(2)(A)(i). They may hold many jobs that are restricted to United States citizens.

39. LPR status is a prerequisite for naturalization. Thus, any delay in adjusting to LPR status also delays eventual naturalization.

## IX. Injury to Petitioner

40. Because Petitioner and his derivatives have waited and will continue to wait significantly longer to become LPRs, they have been and are unable to stabilize their lives. Their status here has been and will continue to be uncertain. They

have not been able to make any family plans because they have not known and do not know when they will become permanent residents.

41. As stated earlier, the process of obtaining a green card can take as much as over six years. Two years or more years of this can be attributed to AOS. In the meantime, most members of the class are either in a nonimmigrant visa status or in a deemed legal status because of the pendency of the AOS Application. Petitioner recognizes and dreads the fact that loss of employment almost invariably would mean uprooting years of life and career built in this country, without there being even one day of grace period given to arrange for passage out of USA.

42. Because Petitioner has not and continues to not become a LPR when or as quickly as he should have, his naturalization has been delayed. Career setbacks are but one of a long list of harms suffered by Petitioner. To list a few, they have been and will continue to be unable to vote and participate fully in our democracy. They have been and will continue to be unable to petition for their family members to immigrate to the United States as immediate relatives.

43. Petitioner's right to due process of law and equal protection under the Fifth Amendment to the United States Constitution have been and are being violated and will continue to be violated by Respondents' failures and policies and practices as described herein.

## X. CLAIM FOR RELIEF

44. Respondents are willfully, and unreasonably, delaying and refusing to adjudicate, the Adjustment of Status Applications of the Petitioner, thereby depriving him and his family of the benefit peace of mind, to which Petitioners are entitled under the Immigration and Nationality Act.

45. Respondents owe Petitioners the duty to act upon his Adjustment Applications, Pursuant to Sections 245, 203(d) an 8 CFR § 212.15, and have unreasonably failed to perform that duty. Petitioner has provided all relevant information and facts in each case.

46. By failing to render timely decisions and requiring repeated applications, Respondents' practices and procedures violate the Administrative Procedures Act and constitute agency action that is arbitrary and capricious, not in accordance with the law 5 U.S.C § 702 et seq., 702, 706 ("...agency action unlawfully withheld or unreasonably delayed" under §706 (1)) and 5 U.S.C § 555.

47. Respondents have failed to discharge their mandated official duties.

48. Petitioner contends that Respondents' actions and decisions relating to delays in adjudications and attendant procedures are unconstitutional, violate the INA, and are arbitrary and capricious and seek a declaration to that effect under 28 U.S.C § 2201.

49. Petitioner has exhausted any administrative remedies that may exist. No other remedy exists for Petitioner to resolve Defendant's delay.

**WHEREFORE, Petitioners pray that the Court:**

(1) Assume jurisdiction of this cause.

(2) Enter an order that this cause be maintained as an individual action.

(3) Declare that Respondents' actions are an arbitrary and capricious abuse of discretion.

(4) Compel Respondents and those acting under them to perform their duty to act upon the Applications for Adjustment of Status owed to Petitioner;

(5) Grant such other and further relief as this Court deems proper under the circumstance; and

(6) Grant attorneys fees and costs of court.

Dated:

Respectfully,

Ashraf Nubani
Attorney for Petitioner
Nubani Law Firm
5029 A Backlick Rd
Annandale, VA 22003
703-658-5151
703-658-9200 (fax)